Good morning, Your Honor. May it please the court. My name is Doug Micco. I represent Carstie Clausen in this appeal of his restitution order. And the sole question in this case is what quality and type of evidence is necessary under the Mandatory Victim Restitution Act to establish an actual compensable loss? That answer is informed in this case by taking a step back and looking at the proceedings that happened below. In 2017, Mr. Clausen pled guilty to two counts, two federal offenses. One was assault of a federal officer. The other was destruction of an aircraft. Those were related to shooting a helicopter that was hovering about 100 or 200 feet over his property. A few days after he pled guilty, the district court held an evidentiary hearing. And at that hearing, the goal of the hearing, for the most part, was to determine whether or not there was enough evidence to institute an official victim enhancement under the sentencing guidelines. In about five pages of transcript during that hearing, this is the June 27th hearing, 2017, starting at page 53, the government adduced evidence from a Customs and Border Patrol aviation maintenance officer named John Clark. And he testified that there was damage to the helicopter, which we already knew. That was the basis for the charge. That the damage had to be repaired. That it took some parts to repair the damage. And that to repair the cockpit or the fuselage, that another crew that wasn't based in the Grand Forks Aviation Office had to come over and help with that from Montana. After that happened, a couple months later, as is typical, a pre-sentence report was prepared. And in that pre-sentence report, paragraph 14 summarized in a small box that had four components to it what the potential damage and restitution may have been in this case. $7,195 for man hours. $10,134 for parts. $1,789 for travel expenses. And then a straight $500 for overtime. I've got to stop you. You've confused me on timing. You've got the PSR coming months after the sentencing hearing? No, Your Honor. And thank you for allowing me to clarify that. The sentencing hearing, that would be very, I'd be here on a different issue if that was the case. Your Honor, shortly after, the change of plea happened on June 20th. A few days after the change of plea hearing, Judge Davis heard and there's set an evidentiary hearing to determine what sentencing enhancements may apply. That was several months before the sentencing hearing. The sentencing hearing happened in November. I was not trial counsel in this case. I suspect that because of the difficulty of having witnesses appear, that perhaps that's the reason for having the evidentiary hearing so quickly after the change of plea hearing. All of this happened in our Duluth courthouse. At the time, and incidentally, I haven't added these set forth in the PSR. Is that the figure that eventually was ordered as restitution? The math adds up, Your Honor. Yes, that's the figure that was ordered for restitution. And then was there an objection to that part of the PSR? There was no objection to that part of the PSR. And I want to address that in really two ways. One is by indicating that at the time that the preliminary and final PSRs came out, there was also no request for restitution from the government. And the PSR itself makes that clear. So to the question of whether there was an objection, the objection would have been of no moment, really. The other issue with objecting- I mean, there was a trial court said there will be restitution. At the change of plea hearing, that's true. I thought at the sentencing hearing also. No? At the sentencing hearing, what happened was that the court, and again, we're bound by the record that we have, which on page 13 and 14 of the sentencing hearing transcript is the best evidence of what happened with regard to restitution. The court indicates that it's holding a sheet from probation indicating $19,000 and some dollars worth of restitution we're owing, and then asks whether defense counsel has seen that sheet. Defense counsel answers no. And then the court indicates that it's going to give additional time for verification of those amounts and for defense counsel an opportunity to investigate. Beck, I mean, when was the first notice the defense had that the government would seek restitution? The first notice had to have been during, well, prior to the change of plea hearing as Mr. Clausen had reviewed the plea agreement. There's no doubt- I mean, from paragraph 14 in the PSR, it was obvious to the defense that restitution was going to be sought, wasn't it? I think that's a fair assumption. And the district court seemed to interpret it that way at sentencing when he said, he asked, you know, have you seen these numbers and so forth? And I'm going to give you some time to challenge and refute and rebut, you know. I think that's a fair interpretation, Your Honor. I don't disagree with that interpretation. It's also fair to acknowledge that the district court itself was going to give additional time to determine whether or not those figures were correct. Because as we know from the many cases of this court, that summary alone, that would not be sufficient for a court to order restitution because the Mandatory Victim Restitution Act requires there to be actual loss compensation only. So in cases from this court, such as we cited in our brief, such as the Hala Lassie case, I believe is the pronunciation, where there was a question about whether or not there was compensable restitution for an anthrax investigation. The matter was sent back to the district court because the district, the court of appeals couldn't tell whether there was a $1,400 bill for work that was compensable or work that was just everyday work of the lab techs that were involved in that case. Similar thing happened in the Etta Jumo case, 848 Fed 3868, where this court... But it seems to me, you said at the start, what evidence is sufficient is the core issue. Yes, Your Honor. But you briefed procedural stuff as well, and you're kind of painting procedural error here. It seems to me the district court's handling of this was completely consistent with Nolan, and time slips don't really matter. The defense had sufficient notice from the PSR and the court's comments at sentence that any time delay could be used to explore, refute the numbers that the government was going to be seeking. Yes, Your Honor. I mean, I understand the government might have sort of blindsided the defense with coming in later with requesting twice the amount that was in the PSR, but that didn't happen. No, that's correct. So we have Clark's testimony as gloss or input for the numbers in the PSR, nothing from the defense contradicting those other than to establish that... I don't know that they were speculative, but they were not precise. Let me go... So I think I'd like to hear what you'd say about why, given the defense's failure, to refute and not placing in the record a few affirmative counter evidence, why did the government fall short of its burden? And that's why I suggest that the issue properly framed is what quality and type of evidence is before the court. Mr. Clausen was not required to come back with any evidence saying, well, $500 for overtime is kind of specious because you need not pay overtime in this case at all. It's up to the government in the first instance to prove by a preponderance of the evidence that there is evidence here. And here when we have... Are you saying that nothing short of the time records would have been sufficient corroboration of the overtime claim? Some itemization, Your Honor, not the time records precisely. Well, how was that preserved? I mean, some itemization. How was the court told that, you know, I don't have anything to counter that, but it's not any good. Your Honor, in our letters that we sent to the court post-sentencing, some four months, five months after sentencing that were sent, and I recognize that I'm out of time, I'll just finish my point, that were sent to the district court post-sentencing regarding restitution, and they're included in our addendum, I believe at D1, we precisely indicated that the issue was that the government had not established by a preponderance of the evidence that this $19,000-plus was necessary. Thank you. May it please the court, counsel? Good morning, Your Honor. It's David Genrich on behalf of the government. Before turning to whether the district court committed clear error in concluding by a preponderance of the evidence that the restitution amount was justified, just briefly would like to touch on the jurisdictional procedural issue briefed in the case and alluded to by Judge... Why? It wasn't argued this morning. Well, I... It was thoroughly briefed. Why do we have to spend our time listening to the counter to an argument that wasn't made? We've got it on the briefs. The response I wanted to make respectfully, Your Honor, was with respect to an argument made in the reply brief, which was that the record was ambiguous about whether the district court had left the record open for the benefit of the defendant, or rather, had inferred some obligation for the government. That wasn't argued this morning. I mean, that's not... It's not substantial. Okay, fair enough, Your Honor. Then with respect to the nature of the evidence, the court has accurately summarized the record in its questioning of Mr. Micco. The plea agreement specified that the defendant would be expected to pay mandatory restitution. At the change of plea hearing, the mandatory restitution obligation was noted as part of the colloquy with defendant. At the evidentiary hearing, including the filings before the evidentiary hearing, the government noticed its intent to adduce evidence with respect to the damage done to the helicopter, and the defense indicated in its pre-evidentiary motion that it understood that evidence with respect to damage would be the subject of the evidentiary hearing. In the PSR, the mandatory restitution obligation was noted. The amounts were itemized. The government would submit with precision down to the penny with respect to the hours of labor, the parts, and the travel. The overtime was the only amount that was a round number. In the government's sentencing position, it noted that the $19,619.45 in restitution, which was the amount ultimately ordered. And at the sentencing hearing, the government again reiterated its request for the $19,000 and over $19,000 in restitution. The district court at sentencing indicated that mandatory restitution would be ordered, leaving only open the amount as to restitution. All of those certainly satisfy the notice requirement at Dolan, but also make it clear that restitution was very much before both the defendant and the court at all material times. With respect to the nature and quality of evidence, I do agree with defense counsel that this court has taken issue with restitution evidentiary showings that are limited to sort of general invoices that are submitted only on the paper without any supplemental testimony. Certainly, the court criticized the government in Adejume and in Ataluto on those grounds. But this court has also affirmed restitution when the government has called witnesses to explain the nature of the damage and the nature of the repairs. And respectfully, the evidence at the evidentiary hearing exceeded sort of the minimized version that was discussed earlier this morning by Mr. Micco. The witness, the aviation mechanic or supervisor did indicate the nature of the damage, that the oil system was damaged, that the door was damaged, that the wiring had to be remanufactured because it could not merely be replaced, that a team had to be flown in from another location, that the parts had to be flown in from overseas based on the fact that the manufacturer of the helicopter was at least in part French. And I think there was some Texas interstate parts as well. So the evidence at the evidentiary hearing was specific with respect to the nature of the damage. And the aviation official was asked, and how much did it cost to repair the helicopter? And the aviation individual, Mr. Clark, indicated approximately $19,600. And again, the final award was $19,619.45. There was no cross-examination with respect to a lack of invoices or receipts. The defendant certainly had a fair opportunity to challenge the witness's testimony, both with respect to the scope of repairs and his summary of the damage amount. And the record here, both under this court's precedent, which does require more than general invoices, and with respect to the was clearly, in the government's view, sufficient to allow this court to affirm, particularly given the standard of review, the court would have to find that the district court clearly erred in concluding that by a preponderance of the evidence, it was more likely than not that the government had sustained $19,619.45 in damage based on a rifle shot that disabled the systems of a CBP helicopter. So the case law establishes that internal labor costs can be recovered by a government agency. So the question whether these internal labor costs were unreasonable, unnecessary, exaggerated, overinflated, and so forth, that's all clear error review, right? Yes, sir. And one matter of... Preponderance standard for the district court, clear error review for us? Yes. Okay. Yes, the court's precedent is clear that the standard of review for the amount of restitution is clear error, and that the appropriate standard for the district court is preponderance. As a matter of record on the internal labor costs, and the court is citing the Haley-Selassie case, which was a case where state lab internal labor costs, this court indicated, were an appropriate measure of restitution for government employee work. I would like to note, I think the government was imprecise in more than suggesting in its brief that the evidence was clear that these were government employees. And I say that because in the evidentiary hearing transcript, which is district court docket number 106 at page 54, Mr. Clark testifies that actually the work done in this case was by government contractors. He states that there were government contractors working on the government aircraft. Under Haley-Selassie and otherwise, it's the government's position that whether it was a government contractor who was employed to make U.S. government is irrelevant as a legal matter. I did want to clarify that with respect to the evidentiary record, government contractors referenced by Mr. Clark as having performed the repairs. And I think that may... You can fight factually over whether the government's choice to do it internally or by contract was reasonable. And certainly... I agree with you, it's legally irrelevant if the repairs were necessary and how you get it done can be challenged. But not the need to get it done. Certainly. And that could have been a subject of challenge, either for cross-examination during the 90 plus days period it was left open, or frankly, the defendant could have asked for additional process below with respect to prejudice or otherwise, none of which the defendant did here. Unless the court had any further questions, I'd address the remainder of the government's argument on the briefs. You'd put in for a whole new helicopter, it would have been a different issue. Your Honor, the manpower cost here, which man hours is how it's referred in the record, if you do the division is $27 an hour. And frankly, the government's surprised that the restitution amount for shooting a rifle through a government helicopter and disabling a number of systems is $19,000. It's no small amount for anyone, but I don't think on its face, there would be any reason for the court to question the reasonableness of the restitution amount. And certainly it wasn't a subject... I wish we could get GSA to work for that. Agreed, Your Honor. Thank you very much. Mr. Meck, I'll have some time. I'll give you... I think I have a minute and a half. Your Honors, let me address first the idea that it was... Certainly Mr. Clausen could have done additional investigative work himself. He could have further cross-examined Mr. Clark. He could have called his own witnesses, but that's not really the question. That's not the question. Notice is not the question. The question is what quantum of proof is necessary to establish the $19,619.35 in damage? Basically a prima facie case issue. Yes, that's correct, Your Honor. I believe that's a perfect way of looking at it. And we'd submit again, the cases from this court established that the small summary chart we have and the five pages of testimony from an aviation services officer were just not sufficient in this case. Consistent with this court's precedent, the appropriate remedy that this court agrees is to remand it to the district court for a more robust evidentiary hearing on this matter. Unless there's further questions, I'll sit down. Thank you, counsel. Thank you. Restitution issues are always interesting and it's been well briefed and argued. I hope Mr. Claussen learned a lesson from this episode. Does that complete the morning's arguments? Yes. Very good. The court will be in recess until two o'clock this afternoon.